UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CHRISTIAN TOBIN, MATTHEW TRENT,
JEFF DAVENPORT, ANDY KRAJEWSKI,
COREY NELSON and FORREST
CAMPBELL,

    Plaintiffs,

v.                                        Case No.:  2:18-cv-616-FtM-38MRM

GREATER NAPLES FIRE RESCUE
DISTRICT,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Before the Court is the parties' Joint Notice of Compromise, which the Undersigned construes as a motion seeking settlement approval. (Doc. 41). The parties jointly request that the Court approve the terms of their proposed Fair Labor Standards Act ("FLSA") Settlement Agreements (Docs. 41-1, 41-2, 41-3, 41-4, 41-5, 41-6) and dismiss the action with prejudice. (Doc. 41 at 1). The six Plaintiffs have each executed a separate yet identical proposed settlement agreement with Defendant Greater Naples Fire Rescue District. After a careful review of the parties' submissions and the record, the Undersigned respectfully recommends that the presiding United States District Judge **DENY WITHOUT PREJUDICE** the parties' motion (Doc. 41) and the proposed settlement agreements.

### LEGAL STANDARD

To approve the settlement of FLSA claims, the Court must determine whether the settlement is a "fair and reasonable resolution of a bona fide dispute" of the claims raised pursuant to the FLSA. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir.

1982); 29 U.S.C. § 216.  There are two ways for a claim under the FLSA to be settled or compromised.  *Lynn's Food Stores*, 679 F.2d at 1352-53.  The first is under 29 U.S.C. § 216(c), providing for the Secretary of Labor to supervise the payments of unpaid wages owed to employees.  *Lynn's Food Stores*, 679 F.2d at 1353.  The second is under 29 U.S.C. § 216(b) when an action is brought by employees against their employer to recover back wages.  *Lynn's Food Stores*, 679 F.2d at 1353.  When the employees file suit, the proposed settlement must be presented to the district court for the district court's review and determination that the settlement is fair and reasonable.  *Id*. at 1353-54.

The Eleventh Circuit has found settlements to be permissible when employees bring a lawsuit under the FLSA for back wages.  *Id.* at 1354.  Specifically, the Eleventh Circuit held:

> [A lawsuit] provides some assurance of an adversarial context.  The employees are likely to be represented by an attorney who can protect their rights under the statute.  Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching.  If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Id.* at 1354.

Applying these standards, the Undersigned analyzes the claims, defenses, and proposed settlements in this case below.

## CLAIMS AND DEFENSES

Plaintiffs allege in their two-count Complaint that Defendant employed them in the capacity of Battalion Chiefs and that Defendant misclassified them as exempt employees under the FLSA.  (Doc. 1 at 5).  Specifically, the Complaint alleges that "Plaintiffs are not paid on a

salary basis, and the duties that Plaintiffs perform do not qualify as administrative or executive under the [FLSA]." (Doc. 1 at 5). Plaintiffs allege they are "regularly assigned to work, and do work, in excess of 53 hours per week and 212 hours in a 28-day period." (*Id.* at 4). Despite this, Plaintiffs allege Defendant failed to pay them at the rate of one and one-half times their base hourly wage rate for hours worked in excess of fifty-three (53) hours per week and 212 hours in a twenty-eight (28) day period. (Doc. 1 at 5-6). The second count of the Complaint alleges that Plaintiff Christian Tobin, individually, complained to Defendant that "he was owed unpaid overtime wages" and Defendant retaliated against Mr. Tobin by suspending him. (Doc. 1 at 6).

      Plaintiffs request that the Court:

> Enter judgment against defendant [sic] for back wages for the suspension and an equal amount of back wages as liquidated damages, attorneys' fees, costs; reinstatement or promotion; or other injunctive relief prohibiting defendants [sic] from discriminating in this manner; awarding damages for emotional distress, humiliation, and pain and suffering, front wages, as well as other damages recoverable by law under 29 U.S.C. §216(b).

(Doc. 1 at 6). Defendant filed an Answer denying liability and asserted several affirmative defenses. (Doc. 14).

While the Complaint does not specify damages, each Plaintiff filed answers to this Court's interrogatories. (Docs. 16-21). Plaintiff Tobin is claiming $102,455.58 in unpaid wages from January 1, 2017 through December 18, 2018. (Doc. 16 at 3). Plaintiff Matthew Trent claims $79,185.54 in unpaid wages from August 9, 2018 to present. (Doc. 17 at 3). Plaintiff Corey Nelson claims $91,319.73 in unpaid wages from August 9, 2018 to present. (Doc. 18 at 3). Plaintiff Jeff Davenport claims $49,695.39 in unpaid wages from August 9, 2018 to present. (Doc. 19 at 3). Plaintiff Forrest Campbell claims $155,893.92 in unpaid wages from August 9, 2018 to present. (Doc. 20 at 3). Lastly, Plaintiff Andy Krajewski claims $100,518.92 in unpaid

3

wages from August 9, 2018 to present. (Doc. 21 at 3). All six Plaintiffs also allege they have incurred, at the time of answering the interrogatories, $400 in costs and $193,023.03 in attorney's fees. (Docs. 16 at 3, 17 at 3, 18 at 3, 19 at 3, 20 at 3, 21 at 3).

## DISCUSSION

The Undersigned finds the parties' filings to be facially deficient. The Joint Notice of Compromise is devoid of any explanation or context surrounding the terms of the proposed settlement agreements. Given that the parties have not provided any justification or explanation for the specific issues identified below, the Undersigned recommends the presiding District Judge deny the instant motion without prejudice to the parties' ability to renew the motion and address the deficiencies set forth below.

### I.     Bona Fide Dispute

As a threshold matter, the Undersigned finds that a bona fide dispute exists between the parties notwithstanding any lack of explanation. As summarized above, Plaintiffs maintain they were non-exempt FLSA employees whom Defendant owed overtime pay. (*See* Doc. 1). Defendant denies any such allegations. (Doc. 14). Accordingly, the proper focus is on the fairness and reasonableness of the proposed settlement agreements.

### II.    Monetary Terms

According to their previously filed answers to Court interrogatories, each Plaintiff claims different amounts of damages with the highest being Mr. Campbell's claim for $155,893.92 (Doc. 20 at 3) and the lowest being Mr. Davenport's claim for $49,695.39 (Doc. 19 at 3). A review of the proposed settlement agreement, however, reveals that each Plaintiff will receive $12,000 with $6,000 (or half) of that amount allocated for overtime compensation and $6,000

4

allocated for liquidated damages. (Docs. 41-1 at 2, 41-2 at 2, 41-3 at 2, 41-4 at 2, 41-5 at 2, 41-6 at 2).

The parties do not attempt to explain the large disparity between the proposed settlement amounts and Plaintiffs' earlier damages estimates in response to Court interrogatories. Nor do they discuss the relative merits of the claims and defenses sufficiently to allow the Undersigned to evaluate whether a reduction in damages is in fact reasonable. Such an explanation is crucial when the amount each Plaintiff is settling for is far below what Plaintiffs initially claimed in their interrogatory answers. Without some explanation describing the massive difference in damages claimed and settlement compensation to be paid, the Undersigned cannot find the proposed monetary terms of the settlement are a fair and reasonable resolution of the parties' dispute.

## III.   Attorney Fees

Plaintiffs' answers to the Court's interrogatories also state that each has incurred $400 in costs and $193,023.03 in attorney's fees. (Docs. 16 at 3, 17 at 3, 18 at 3, 19 at 3, 20 at 3, 21 at 3). It is unclear from their answers, however, whether each Plaintiff has individually incurred a $400 cost and $193,023.03 in fees or if that is the total amount of fees and costs associated with the dispute for all Plaintiffs. The parties must be required to clarify and explain this in a renewed motion.

Nevertheless, a review of the proposed settlements reveals that each Plaintiff will receive "a check in the amount of $6,333.33 . . . for [their] attorney fees and costs." (Docs. 41-1 at 3, 41-2 at 3, 41-3 at 3, 41-4 at 3, 41-5 at 3, 41-6 at 3).[1] The massive disparity in the amount alleged

---

[1] Plaintiffs Nelson and Campbell are receiving $6,333.**34**, which is one cent more than their co-Plaintiffs. (Docs. 41-5 at 3, 41-6 at 3). This discrepancy is not explained.

5

in fees and costs compared to those tendered in the proposed settlement aside, there is a more troubling issue.

Specifically, as explained in *Bonetti v. Embarq Management Company*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009), "the best way to insure that no conflict [of interest between an attorney's economic interests and those of his client] has tainted the settlement is for the parties to reach agreement as to the plaintiff's recovery before the fees of the plaintiff's counsel are considered. If these matters are addressed independently and seriatim, there is no reason to assume that the lawyer's fee has influenced the reasonableness of the plaintiff's settlement." In *Bonetti*, the Court concluded:

> [I]f the parties submit a proposed FLSA settlement that, (1) constitutes a compromise of the plaintiff's claims; (2) makes full and adequate disclosure of the terms of settlement, including the factors and reasons considered in reaching same and justifying the compromise of the plaintiff's claims; and (3) represents that the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff, then, unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel.

715 F. Supp. 2d at 1228.

In the instant case, there is no indication as to how the parties negotiated and settled the attorney's fees and whether or not the negotiations involving Plaintiffs' damages were separate from those involving fees and costs. The lack of explanation for why the sum tendered for costs and fees is so much less than what Plaintiffs initially claimed, precludes approval of the settlement and raises questions as to the parties' negotiating process. Without any explanation whatsoever, the Undersigned cannot determine whether the fees and costs agreed upon compromised the amount paid to Plaintiffs. It very well could be that the parties first negotiated

the sum Defendant would pay Plaintiffs and then what Defendant would pay Plaintiffs' attorney, but nothing in the record shows that to be the case. For that reason, the Court cannot determine the fairness nor reasonableness of the proposed settlements without more information.

### IV.     Non-Cash Concessions

The proposed settlement agreements also contain several non-cash concessions. A number of jurists in this District have expressed the view that non-cash concessions by an employee affect both the "fairness" and "full compensation" components of a settlement, and require their own fairness finding. *See Jarvis v. City Elec. Supply Co.*, No. 6:11-cv-1590-Orl-22DAB, 2012 WL 933057, at *5 (M.D. Fla. Mar. 5, 2012), *report and recommendation adopted*, 2012 WL 933023 (M.D. Fla. Mar. 20, 2012).

Notwithstanding this line of cases, other jurists in this District have approved non-cash concessions in FLSA settlement agreements where the concessions were negotiated for separate consideration or where there is a reciprocal agreement that benefits all parties. *Bell v. James C. Hall, Inc.*, No. 6:16-cv-218-Orl-41TBS, 2016 WL 5339706, at *3 (M.D. Fla. Aug. 16, 2016), *report and recommendation adopted*, No. 6:16-cv-218-Orl-41TBS, 2016 WL 5146318, at *1 (M.D. Fla. Sept. 21, 2016); *Smith v. Aramark Corp.*, No. 6:14-cv-409-Orl-22KRS, 2014 WL 5690488, at *4 (M.D. Fla. Nov. 4, 2014).

Here, the proposed settlements are defective under either approach. First, and notably, certain non-cash concessions do not appear related at all to the instant action. For example, a clause in each proposed settlement titled "Medicare Indemnification" states:

> The Parties [sic] agree that, in the event of a breach of the Medicare-related representations and warranties made by [Plaintiff], [Defendant's] insurers shall be entitled to set off any remaining payments due to [Plaintiff] under the terms of this Agreement or any other agreement up to the total amount of any conditional payments unpaid by [Plaintiff] and **related to the alleged accident(s),**

7

> **injury(ies), or illness(es) giving rise to this settlement**, as well as to the full extent of damages and other relief available at law or equity.
>
> [Plaintiff] and his representatives agree to indemnify, hold harmless, and defend [Defendant's] insurers against any loss, cost, expense, or liability imposed upon or incurred by the insurer **arising from, relating to, or concerning Medicare conditional payments related to the alleged accident(s), injury(ies), or illness(es) giving rise to this settlement**.

(Docs. 41-1 at 6, 41-2 at 5-6, 41-3 at 5-6, 41-4 at 5-6, 41-5 at 5-6, 41-1 at 5-6 (emphasis added)). Beyond the normal non-cash concession fairness analysis that cannot be performed here given the lack of any explanation or context for this provision, the Undersigned is also unsure of its relevancy. Put another way, neither the Complaint, the Answer, nor Plaintiffs' answers to the Court's interrogatories mention any dispute involving Medicare, yet the proposed settlement seeks to impose a Medicare-related obligation upon Plaintiffs. If this provision is an accurate reflection of the nature of Plaintiffs' claims, then the Undersigned cannot reasonably analyze the fairness of such a provision given that the first time the parties mention potential Medicare liability is in the proposed settlement agreements.

Moreover, the proposed settlement agreements contain several other troubling non-cash concessions without any explanation of separate consideration or reciprocity. Most troubling of all is the language concerning the general release. In the proposed settlement agreements' preamble, the parties explicitly represent that they "want to resolve any and all disputes between them, including but not limited to the disputes set forth in the Complaint and **every other dispute** that may exists [sic] up to the date this Agreement is executed." (Docs. 41-1 at 2, 41-2 at 2, 41-3 at 2, 41-4 at 2, 41-5 at 2, 41-6 at 2 (emphasis added)). Indeed, each proposed settlement agreement contains a "General Release" provision whereby each Plaintiff:

8

> [i]n exchange for the above referenced consideration, [] knowingly and voluntarily releases and waives **any and all rights and claims, both known and unknown**, that he may have against the Released Parties **regarding any aspect** of his employment and/or contractual relationship with the Released Parties occurring on or before the date of the complete execution of this Agreement. These claims include, **but are not limited to**, rights and claims under Title VII of the Civil Rights Act of 1964, as amended (Title VII), the Age Discrimination in Employment Act of 1967 (ADEA), the Americans with Disabilities Act of 1990, as amended (ADA), the Older Workers Benefit Protection Act (OWBPA), Family and Medical Leave Act (FMLA), 42 U.S.C. 1981, 42 U.S.C. 1983, Florida Civil Rights Act of 1992 (FCRA), the Fair Labor Standards Act of 1938 (FLSA), **and any other claims against the Released Parties under any federal, state and/or local statute, regulation, ordinance, or code or for any contractual (employment or otherwise) or common law, contract, and/or tort claims (including claims regarding breach of oral or written contract; negligent misrepresentation; promissory estoppel; detrimental reliance; fraud; negligent supervision; intentional infliction of emotional distress; etc.**). [Plaintiff] also waives **any and all rights and claims** related to his employment and/or contractual relationship with the Released Parties **that are not otherwise specifically listed in this paragraph**.

(Docs. 41-1 at 3-4, 41-2 at 3, 41-3 at 3, 41-4 at 3, 41-5 at 3, 41-6 at 3 (emphasis added)). The General Release, on its face, is not limited to solely the FLSA claims at issue but instead implicates every single legal claim Plaintiffs may have against Defendant.

Normally, such a "pervasive release in an FLSA settlement introduces a troubling imponderable into the calculus of fairness and full compensation." *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1351 (M.D. Fla. 2010). On the one hand, the general release can be absolutely valueless to Defendant if Plaintiffs have no other claims, *i.e.*, Plaintiffs give up nothing because they have nothing to give up and Defendant therefore gains nothing. On the other hand, the release can be an incredibly disproportionate windfall to Defendant if, for example, years later Plaintiffs realize chemicals their job exposed them to caused severe medical issues. In such an instance, Plaintiffs' "release of the unknown claim (if effective) both confers an undeserved and

9

disproportionate benefit on the employer and effects an unanticipated, devastating, and unfair deprivation on the employee." *Id.*

Whereas here, when there is no such explanation of the negotiation process, the calculus of fairness and full compensation is indeed impossible to parse. The Undersigned recognizes that Defendant also provides a concession in that it agrees to reclassify Plaintiffs' position and "agrees to remove managerial duties and responsibilities [] as it deems appropriate." (Docs. 41-1 at 7, 41-2 at 7, 41-3 at 7, 41-4 at 7, 41-5 at 7, 41-6 at 7). Defendant, moreover, agrees that Plaintiffs' new position will be non-exempt for overtime purposes after Defendant removes the managerial duties and responsibilities it deems appropriate and to support the unionization of the new position. *Id.* General releases, especially those as broad as the one found in the parties' proposed settlement agreements, are exceedingly rare in FLSA settlements but the courts that have approved such releases generally find a mutuality of benefits. Nevertheless, without any attempt from the parties to explain why the scope of the release is fair and reasonable, the Court cannot approve the settlements at this time.

In addition, the proposed settlement agreements contain several other provisions that are problematic in an FLSA context. First, the agreements contain a "Confidentiality" clause prohibiting Plaintiffs from disclosing the terms of the settlement. (Docs. 41-1 at 4, 41-2 at 4, 41-3 at 4, 41-4 at 4, 41-5 at 4, 41-6 at 4). "Courts in this circuit routinely reject FLSA settlement agreements containing confidentiality provisions." *Pariente v. CLC Resorts & Devs., Inc.*, No. 6:14-cv-615-Orl-37TBS, 2014 WL 6389756, at *5 (M.D. Fla. Nov. 14, 2014) (collecting cases).

Next, the settlement agreements also contain a "Non-Disparagement" clause whereby Plaintiffs agree not to disparage or defame Defendant except that the provision is not intended to limit Plaintiffs ability to "seek redress for any future alleged violations of federal, state, or local

10

law, or to engage in protected concerted activity." The parties, however, do not include any information as to how they negotiated this clause and what concessions, if any, were exchanged. (Docs. 41-1 at 7, 41-2 at 7, 41-3 at 7, 41-4 at 7, 41-5 at 7, 41-6 at 7).

Further, Plaintiffs also agree that they "will not, with either malice, caprice, or a lack of factual foundation, instigate, cause, advise or encourage any other individuals or entities to file a formal complaint, charge or lawsuit against" Defendant. Again, the parties do not explain what Plaintiffs will receive in exchange for this obligation. (Docs. 41-1 at 7, 41-2 at 7, 41-3 at 7, 41-4 at 7, 41-5 at 7, 41-6 at 7).

Lastly, the agreements also oblige Plaintiffs to "waive any right [they] may have to a trial by jury with respect to any litigation related to or arising out of, under, or in conjunction with any provision in [these] Agreement[s], or [Plaintiffs'] employment with [Defendant]." (Docs. 41-1 at 6, 41-2 at 6, 41-3 at 6, 41-4 at 6, 41-5 at 6, 41-6 at 6). Nowhere do the parties explain what consideration or mutuality, if any, warrants the Court finding that these non-cash concessions are fair and reasonable.

In sum, the proposed settlement agreements are replete with non-cash concessions. The Court cannot adequately analyze the fairness or reasonableness of these concessions without more explanation from the parties regarding these issues.

**V.     Severability**

The Undersigned notes that the proposed settlement agreements contain "Entire Agreement, Severability, and Modification" provisions that provide, in relevant part, the "Agreement[s] are severable, and that if any single clause or clauses shall be found unenforceable, the entire Agreement shall not fail but shall be construed and enforced without

11

any severed clauses in accordance with the terms of [these Agreements]." (Docs. 41-1 at 6, 41-2 at 6, 41-3 at 6, 41-4 at 6, 41-5 at 6, 41-6 at 6).

This Court has stricken certain unacceptable or unenforceable provisions of a settlement agreement before approving the settlement agreement. *See Housen v. Econosweep & Maint. Servs., Inc.*, No. 3:12-CV-461-J-15TEM, 2013 WL 2455958, at *2 (M.D. Fla. June 6, 2013); *Ramnaraine v. Super Transp. of Fla., LLC*, No. 6:15-cv-710-Orl-22GJK, 2016 WL 1376358, at *3 (M.D. Fla. Mar. 28, 2016), *report and recommendation adopted*, No. 6:15-cv-710-ORL-22GJK, 2016 WL 1305353 (M.D. Fla. Apr. 4, 2016).

The severability clause in the Settlement Agreement here would appear to permit such a result. Nevertheless, the Undersigned recommends against such *sua sponte* revisions as the Undersigned finds the non-cash concessions constitute the bulk of the material terms of the parties' agreements. Any severance would fundamentally and essentially change the nature of the parties' agreements. The Undersigned finds it is more prudent to allow the parties to, if they can, explain why these concessions are fair and reasonable as a matter of law and fact.

## CONCLUSION

Given the parties' failure to provide adequate context, discussion, or analysis regarding the terms of the settlement agreements, the Undersigned cannot meaningfully review the proposed settlement agreements for fairness or reasonableness.

Accordingly, the Undersigned **RESPECTFULLY RECOMMENDS** that:

1. The parties' Joint Notice of Compromise (Doc. 41), which the Undersigned construes as a joint motion seeking settlement approval, and the parties proposed settlement agreements (Docs. 41-1, 41-2, 41-3, 41-4, 41-5, 41-6) be **DENIED** without prejudice.

2. The parties be ordered to renew their motion to approve the settlements to address the issues identified in this Report and Recommendation by a date certain and provide the relevant information needed for this Court to conduct a meaningful analysis of the proposed settlements.

**RESPECTFULLY RECOMMENDED** in Chambers in Ft. Myers, Florida on February 24, 2020.

_____
MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Copies furnished to:

Counsel of Record
Unrepresented Parties

13