UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CHRISTIAN TOBIN, MATTHEW TRENT,
JEFF DAVENPORT, ANDY KRAJEWSKI,
COREY NELSON and FORREST
CAMPBELL,

      Plaintiffs,

v.                                 Case No.:   2:18-cv-616-FtM-38MRM

GREATER NAPLES FIRE RESCUE
DISTRICT,

      Defendant.
_____/

## REPORT AND RECOMMENDATION

Before the Court is the parties' Joint Motion to Approve Settlement Agreement and Dismiss with Prejudice Plaintiffs' Complaint and Memorandum of Law in Support.  (Doc. 46). For the reasons set forth herein, the Undersigned recommends that the parties' Joint Motion (Doc. 46) be **GRANTED**.

## DISCUSSION

A brief procedural background is helpful.  The parties initially filed a Joint Notice of Compromise, which the Undersigned construed as a motion seeking settlement approval.  (*See* Doc. 41).  The Undersigned issued a Report and Recommendation that found the Joint Notice deficient in that it lacked critical information the Court needed to fully and meaningfully analyze the parties' Fair Labor Standards Act settlement agreements under *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982).  (*See* Doc. 43).  Neither party objected and the presiding United States District Judge accepted and adopted the Undersigned's Report and Recommendation.  (Doc. 44).  The parties, in the filing *sub judice*, address those deficiencies the

Report and Recommendation identified. Thus, the Undersigned will address the parties' settlement in the same manner the Undersigned did in the prior Report and Recommendation. (*See* Doc. 43 at 4, 5, 7).

I.      **Monetary Terms**

The Undersigned previously noted a vast discrepancy in the amount of wages Plaintiffs originally claimed Defendant owed them and what Plaintiffs will actually receive as part of their settlement. For example, the lowest estimate of damages a Plaintiff claimed was $49,695.39 and the highest was $155,893.92, but Plaintiffs only receive $6,000 for overtime compensation under the terms of the proposed settlement plus liquidated damages in the same amount. (*See* Doc. 43 at 5; *see also* Docs. 46-1 – 46-6).

Here, the parties represent that not only were Plaintiffs highly unlikely to prevail at trial, but that Plaintiffs also "inadvertently miscalculated the amount of overtime they would receive if they prevailed." (Doc. 46 at 8).[1] For example, Plaintiffs claim that they used an improper formula to calculate their overtime compensation and therefore "assumed they worked 16 hours of overtime every week when they did not." (*Id.*). Plaintiffs also "failed to offset their alleged overtime claims with the block pay Defendant paid them whenever they worked overtime" and that the "miscalculations led Plaintiffs to significantly over-estimate the amount of overtime they were claiming." (*Id.* at 9).

The Undersigned is satisfied with this explanation. The parties have explained that as a result of their miscalculations their actual damages are far less than their estimated damages, which justifies a lower damages amount.

---

[1] The parties represent that this matter is "almost identical to another case decided in the Middle District of Florida that held battalion chiefs were exempt under the executive and administrative exemptions," and cite *Debrecht v. Osceola County*, 243 F. Supp. 2d 1364 (M.D. Fla. 2003).

**II.     Attorney Fees**

Next, the parties' prior filing provided "no indication as to how the parties negotiated and settled the attorney's fees and whether or not the negotiations involving Plaintiffs' damages were separate from those involving fees and costs." (Doc. 43 at 6). This was especially troubling because, as explained in *Bonetti v. Embarq Management Company*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009), "the best way to insure that no conflict [of interest between an attorney's economic interests and those of his client] has tainted the settlement is for the parties to reach agreement as to the plaintiff's recovery before the fees of the plaintiff's counsel are considered. If these matters are addressed independently and seriatim, there is no reason to assume that the lawyer's fee has influenced the reasonableness of the plaintiff's settlement."

Here, the parties' approach—while unconventional—appears to be sufficient to permit approval of the proposed settlement. According to the Joint Motion, "the parties did not reach an agreement in relation to Plaintiffs' settlement amount prior to addressing attorney fees" but "the parties' six months settlement discussions involved negotiations that separated Plaintiffs' portion of the settlement from the amount of attorney fees and costs." (Doc. 46 at 9). Instead, it appears the parties negotiated a lump-sum settlement and "[t]he final division of the $110,000.00 gross settlement amount was determined by Plaintiffs in consultation with their attorney." (*Id.*).

While this approach differs somewhat from the approach preferred in *Bonetti*, the Undersigned finds that the parties' approach here, as described in the Joint Motion, provides some assurance that the amount of Plaintiffs' recovery was determined independent of and separate from the amount of their attorneys' fees. Taking the parties' representations at face value, this would mean that the parties negotiated Plaintiffs' damages separately from attorneys' fees and did not allow one to influence the other. Based upon the parties' explanation, the

Undersigned is satisfied that the amount Defendant will pay Plaintiffs' attorneys under the settlement did not compromise their recovery.

### III.     Non-Cash Concessions

Lastly, and most problematic, were the issues the Undersigned identified with the parties' proposed settlement in the context of non-cash concessions. In particular, the Undersigned was concerned with the parties' general release, confidentiality clause, non-disparagement clause, and an affirmative obligation requiring Plaintiffs to refrain from inciting others to file a complaint or lawsuit against Defendant. (*See* Doc. 43 at 9-11). Without any context whatsoever, the Court had no way to quantify the value of these concessions or otherwise analyze their fairness or reasonableness.

Here, the parties represent that "it is critical to note that Plaintiffs' non-monetary demands were very important to them." (Doc. 46 at 9). Indeed, based upon the parties' explanations, it seems that Plaintiffs' non-cash entitlements under the settlement were more important to them than their damages. For example, Plaintiffs requested that Defendant completely reclassify Plaintiffs' jobs, removing "managerial duties, treating Plaintiffs as non-exempt and entitled to overtime compensation upon removal of said duties, and not opposing Plaintiffs' petition to join the union that represents Defendant's other firefighters." (Doc. 46 at 8).

As to the reclassification, the parties point out that this has a "substantial financial impact on Defendant" in that "Plaintiffs' compensation was not reduced as part of the removal of management duties. That means Plaintiffs are now entitled to overtime compensation while doing less work and being paid at the same rate they received" in their prior roles. (Doc. 46 at 10). Moreover, allowing Plaintiffs to join the union that represents Defendant's other

firefighters, the parties explain, "avails them to benefits of the collective bargaining agreement that they did not previously receive" such as heightened job security.  (*See id*. at 10-11).

Against this backdrop, and for these considerations to Plaintiffs, the parties explain how they negotiated the remainder of their non-cash concessions.  These future benefits also impacted Plaintiffs' cash concession because "Defendant agreed to the aforementioned non-monetary consideration to make the financial consideration more appealing to Plaintiffs and to obtain other provisions in the final settlement agreements." (Doc. 46 at 10).

This explanation demonstrates that the parties fairly negotiated, and both received, the benefits of the proposed settlements' non-cash concessions.  By way of example, the parties state that "Plaintiffs reviewed the general release and confidentiality provisions understanding they were material terms for Defendant to settle because of Plaintiffs continued employment" with Defendant.  (Doc. 46 at 10).  Plaintiffs also ceded from Defendant that the non-disparagement clause would not apply to any redress Plaintiffs sought for future alleged violations nor hamper Plaintiffs' ability to engage in protected concerted activity.  (*Id*. at 11).  Similarly, Defendant agreed to a limited non-encouragement clause that included language upon which Plaintiffs insisted.  (*See id.* at 11-12).

Upon consideration of the parties' explanation for their non-cash concessions, the Undersigned is satisfied that the terms of the proposed settlement are fair.  Specifically, considering Plaintiffs' continued employment with Defendant—and the several benefits accompanying that continued employment—the Undersigned finds that there was a meaningful and mutual exchange of consideration and benefits by both sides.  Therefore, the Undersigned recommends that the Court approve the parties' proposed settlements. (Docs. 46-1, 46-2, 46-3, 46-4, 46-5, 46-6).

## CONCLUSION

Accordingly, the Undersigned **RESPECTFULLY RECOMMENDS** that:

1. The Joint Motion to Approve Settlement Agreement and Dismiss with Prejudice Plaintiffs' Complaint and Memorandum of Law in Support (Doc. 46) be **GRANTED**.

2. The Clerk of Court be directed to dismiss this action with prejudice and close the file.

**RESPECTFULLY RECOMMENDED** in Chambers in Ft. Myers, Florida on June 23, 2020.

_____
MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Copies furnished to:

Counsel of Record
Unrepresented Parties